# In the Matter of the Estate of MARIA PFEIFFER, Deceased.

Surrogate's Court, New York County, July 1, 1937.

*Frederick H. Schwegler*, for the administratrix.

*Topken & Farley*, for the next of kin and distributees.

*John Schneider*, claimant, in person.

*Joseph Nicchia*, for the Consul of the Duchy of Luxemburg, representing his nationals, Peter Pfeiffer's sisters and their heirs.

FOLEY, S. A preliminary question arises in this accounting proceeding which involves the construction of the will of Peter Pfeiffer, the husband of the decedent, and the effect of the bequest and devise of the residue of his estate. The paragraph reads as follows:

" *Second.* All the rest, residue and remainder of my property real and personal and wheresoever situated I give, devise and bequeath to my wife Mary Pfeiffer for her use and benefit for and during her life time with full power to my said wife to sell, rent or otherwise dispose of said property and use any part or all thereof for her use and benefit; and upon her death what ever may remain of my property, I give, devise and bequeath to my Sisters or their heirs as may be living at that time."

Mrs. Pfeiffer died intestate. Her administratrix and her next of kin contend that the gift to her was absolute and outright and was not cut down by the clause at the end of the paragraph which gave whatever might remain of the property to the testator's sisters or their heirs living at the death of his wife. At the time of the death of the wife there were two sisters and the children of two deceased sisters within the class of remaindermen. These remaindermen are represented by the Consul of Luxemburg. Their attorney contends that the gift to the wife was not absolute and the property of the husband remaining in her possession at her death passed under the terms of the will of the husband to them.

The rules applicable to the interpretation of such clauses as found here have been frequently stated. (1) A gift to one followed by a gift to another of such part as may remain at the decease of the first taker can be enforced where the intention of the giver is clear and definite to limit the gift to the first taker to a life estate with power to dispose of the principal or any part thereof during his lifetime and to give to another the undisposed of portion of the principal. (*Tillman* v. *Ogren*, 227 N. Y. 495; *Seaward* v. *Davis*, 198 id. 415; *Matter of Taylor*, 149 Misc. 706.) (2) Where the gift is absolute and the alternative provision by way of remainder is indefinite or uncertain or precatory, the gift to the first taker is outright and is undiminished and unaffected by the subsequent provisions. (*Tillman* v. *Ogren*, *supra; Matter of Mursullo*, 160 Misc. 148.)

In *Matter of Taylor* (*supra*) I reviewed the two lines of decisions in the Court of Appeals and in other courts where these rules have been applied. In the pending proceeding the language of the residuary clause of Mr. Pfeiffer's will clearly indicates that an outright and absolute gift to his wife of all his property was not intended. I accordingly hold that the portion of his property undisposed of by her passed to his sisters and the children of his two deceased sisters under the terms of his will. My decision is controlled by the decisions of the Court of Appeals in *Matter of Felt* (235 N. Y. 374); *Matter of Ithaca Trust Co.* (220 id. 437); *Seaward* v. *Davis* (*supra*); *Leggett* v. *Firth* (132 N. Y. 7), and *Vincent* v. *Rix* (248 id. 76). (See, also, *Matter of Stevens*, 241 App. Div. 490.)

An analysis of the residuary clause of the husband's will indicates a bequest and devise to the wife (1) for her own use and benefit during her lifetime; (2) with full power to her to sell, rent " or otherwise dispose " of the property; (3) to use any part or all thereof for her use and benefit; (4) whatever was left was given to the remaindermen or to the alternative group of remaindermen in case of the death of any of them. The power conferred upon the wife to dispose of the property, even to give it away during her lifetime, is extremely broad. (*Matter of Ithaca Trust Co.*, *supra*.) The will in this regard is similar to that in *Matter of Felt*, where by the express terms of the will the testator had empowered his wife to dispose of the corpus of the estate during her lifetime. In that case Judge HOGAN, writing for the court, analyzed other decisions with similar provisions for disposition of what remained at the death of the first taker. (235 N. Y. 374, at p. 380.) Thus in *Seaward* v. *Davis* (198 N. Y. 415) the provision for the remainder was as to " whatever remains." In *Thomas* v. *Wolford* (49 Hun, 145) " should there be any [property] left." In *Mitchell* v. *Van Allen* (75 App. Div. 297), " all that may remain and be left is to go to our daughter." In *Matter of Skinner* (81 App. Div. 449; affd., 180 N. Y. 515) the will read, " The rest and residue thereof then remaining." In *Matter of Ithaca Trust Co.* (220 N. Y. 437) the gift was to the mother of the testator to be " hers absolutely to use up, spend or give away, in any way she sees fit, but I will and direct, in the event there is any of the property * * * left and undisposed of by her at the time of her death " that such property shall belong to my wife. All of these forms of direction were held to be enforcible in favor of the second takers.

The facts in the present proceeding with regard to the assets left by Mr. Pfeiffer to his wife, her disposition of such assets, the circumstances surrounding the management by the wife of her own property and the assets left by her are relatively simple. They

are contained in part in the account itself. Certain other facts are embodied in a stipulation which the administratrix and the next of kin of Mrs. Pfeiffer have entered into, but in which counsel for the sisters has refused to acquiesce although conceding certain of the facts to be true.

Mr. Pfeiffer died in 1925. His wife died on February 10, 1936. she survived him, therefore, by a period of eleven years. At the time of his death she had an individual bank account in a savings bank in New York city in the sum of $600. She had a joint account with her sister in the Callicoon National Bank, Callicoon, N. Y., in the sum of $300. During the entire period she was regularly employed and derived an income from her wages. Mr. Pfeiffer left a relatively small amount of cash, all of which was spent by the wife for her own use. He left certain real property in Luxemburg which was owned by his wife and himself as tenants in common. The nature of the title and ownership under the law of that country is conceded. In 1934 the wife sold the property and derived from it the sum of approximately $4,900. One-half of the proceeds belonged to her absolutely. The remaining half — $2,450 — might be earmarked as property derived from the husband's estate. Part of the total proceeds was deposited by her in the joint account with her sister. The remaining amount was placed in her individual bank account. The only individual asset left by her at the time of her death, according to the account, was a balance in the Central Savings Bank of $3,994.96.

It appears conclusively that the joint account of the decedent and her sister, which amounted to $2,041.08 at the time of her death, was comprised entirely of the decedent's individual funds and those of her sister, and by reason of the provision for survivorship in the account, the balance of the deposit is the property of the sister.

Upon the present state of the record it is impossible to make any determination as to what part of the husband's property remained at the time of her death, or to ascertain whether the moneys in her individual account were accumulated from her own savings. It is likewise impossible at this time to determine whether the wife properly appropriated under the terms of the will any part of the proceeds of the sale derived from the husband's share of the real estate. The burden of showing the exact amount of the husband's funds remaining in the hands of the wife at the time of her death is cast upon the sisters and the children of the deceased sisters claiming as remaindermen. (*Seaward* v. *Davis*, *supra*.) Tentatively it would appear that the maximum amount which they

could recover would be $2,450, being one-half of the selling price of the real estate. This amount, however, may be diminished after the taking of evidence tending to show the true conditions, by the amounts derived from the personal funds and earnings of the wife and by any amounts appropriated by her lawfully from her husband's estate. In this connection I specifically hold that the mere deposit of this fund in the individual bank account of the decedent did not constitute an authorized appropriation by her which would defeat the rights of the remaindermen. Proof of the actual facts, however, must be adduced since the stipulation of facts has not been signed by the attorney for the remaindermen. The matter is, therefore, set for a further hearing on the 23d day of August, 1937, at two-thirty P. M.

The so-called objections filed by the attorney for the remaindermen do not comply in form with the provisions of the Surrogate's Court Act or the rules of this court. They are unverified. Objections in proper form are directed to be served and filed on or before July 15, 1937.

The claim of John Schneider is allowed in the sum of $50.95 and payment thereof may now be made and subsequently ratified by the final decree to be entered at the close of the proceeding.

Proceed accordingly.